IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **EDWARD SMITH, individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**SAFE AUTO INSURANCE COMPANY, a foreign corporation,**<br><br>Defendant.<br>_____ | **CASE NO.:**<br><br>**JUDGE**<br>**MAGISTRATE**<br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Edward Smith, individually and on behalf of all others similarly situated, files this Class Action Complaint against Safe Auto Insurance Company, and in support thereof states:

## NATURE OF THE ACTION

1. This is a Class Action lawsuit by an Ohio resident, Mr. Smith, pursuant to an automobile insurance policy (the "Policy") issued to cover private passenger automobiles after Plaintiff made a covered claim for physical damage to his vehicle. Plaintiff made a covered claim for physical damage. Defendant breached its policy by failing to pay the full sales tax, title transfer fees, and registration fees due under the policy.

2. Plaintiff files this lawsuit on behalf of all persons insured under a Safe Auto insurance policy who suffered a total-loss covered claim and were not paid the full sales tax, title-transfer fees, and registration fees due under their policy.

3. In the Policy, Defendant's standardized policy language promises, upon the total loss of an insured vehicle, to provide payment of the actual cash value ("ACV") of the insured vehicle to the insured.

4. Defendant's standardized policy language as to coverage for the ACV of total loss vehicles is present in every auto policy issued by Defendant in the states set forth herein during the relevant time period.

5. Sales tax, title fees, and registration fees are a part of the ACV of every vehicle insured by Safe Auto, including for Plaintiff's total loss vehicle.

6. The Policy does not include any term, condition, or other requirement on insureds necessary for entitlement to the full payment of ACV. Instead, the Policy provides that it will pay a certain value—ACV—to the named insured.

7. This lawsuit is brought by the Plaintiff, individually and on behalf of all other similarly situated insureds, who suffered damages due to Defendant's practice of refusing to make proper ACV payments to first-party total loss claimants under insurance policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendant fails to include state and local title transfer and vehicle registration fees ("Transfer Fees") and Sales Tax in its calculation of ACV when making total loss payments to its insureds.

8. Defendant's failure to pay the ACV of total-loss vehicles, including Sales Tax and Transfer Fees, constitutes a material breach of contract as to Plaintiff and every member of the putative Class.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiff is a member of the putative classes, which consists of at least 100 members;

(b) the amount-in-controversy exceeds $5 million exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply.

10. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within this district and Safe Auto is subject to personal jurisdiction in this district.

## THE PARTIES

11. At all material times hereto, Plaintiff was a resident of the State of Ohio, and domiciled in Hamilton County, Ohio.

12. At all times material hereto, Safe Auto is and was a corporation domiciled in the State of Ohio, headquartered in this district, and authorized by the Ohio Department of Insurance to transact insurance in the State of Ohio.

## FACTUAL ALLEGATIONS

**A.     Defendant's Policy and Processes**

13. Pursuant to its standard and uniform policies of insurance, Defendant promises to pay for loss of or damage to an insured vehicle for comprehensive and collision coverage.

14. Defendant's standard and uniform policies define loss as "direct and accidental loss of or damage to" the insured vehicle. *Id*. at 6.

15. The Policy promises to pay for loss by repairing or replacing the vehicle or paying the equivalent in money.

16. When a loss occurs, Defendant estimates the repair cost, which might include replacement of component parts. If that amount exceeds the vehicle's ACV, the vehicle is a "total loss." This means Defendant does not owe insureds the full amount but instead only the pre-loss ACV.

17. Said another way, that a total-loss occurs inherently means the amount of loss exceeds ACV, which is Defendant's limit of liability. Thus, while Defendant promises to pay for loss measured as the cost to repair, Defendant's obligation to pay for loss is limited to the ACV of the insured vehicle. As with virtually all policies and insurers, the cost to repair or replace applies to partial losses (i.e. where the vehicle is subject to restoration), while ACV applies to total losses, precisely because a total loss, by its very nature, occurs where the ACV is less than the cost to repair or replace the damage.

18. ACV is not defined in the Policy.

19. Defendant's standardized policy language with respect to ACV coverage for total loss vehicles exists in every automobile policy issued by Defendant in the states listed herein during the relevant time period.

20. The Policy language applies to all covered vehicles irrespective or ownership interest—whether owned, financed, or leased.

21. The Policy language does not include: (1) any provision excluding Sales Tax or Transfer Fees from the cost to repair or replace damaged property or from ACV; (2) any provision deferring payment of Sales Tax or Transfer Fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle before receiving payment; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving Sales Tax or Transfer Fees; or (5) any provision linking the amount of Sales Tax to a particular replacement vehicle and the corresponding state or local regulatory sales tax and/or fees on said replacement vehicle.

22. Under Defendant's Policy, the ACV of an insured vehicle includes costs necessary to replace the vehicle.

23. In exchange for the premiums paid by the insureds, Defendant promises through its Policy to pay a predictable amount—the actual cash value of the insured vehicle.

**B.     Plaintiff's Total-Loss Claim**

24. At all times material hereto, Plaintiff owned a 2010 Kia Soul, which was insured by a policy of insurance (described above) issued by Defendant.

25. On or about January 17, 2020, Plaintiff was involved in an automobile accident while operating the vehicle, after which Plaintiff filed a claim for property damage with Defendant.

26. Following the filing of the claim, Safe Auto determined that it was a covered claim and that the cost to repair and restore the damaged vehicle to its pre-loss condition exceed the pre-loss ACV of the vehicle, and thus that the loss suffered was a "total loss."

27. Plaintiff does not contest Defendant's determination that the amount of loss exceeded the vehicle's ACV nor that the relevant limitation is the vehicle's ACV.

28. Subsequently, a third-party vendor determined the underlying value of the vehicle was $5,441.00. Exhibit B ("Valuation Report").

29. No amounts for Sales Tax or Transfer Fees were included in the Valuation Report. *See* Ex. B at 1. In fact, the Valuation Report explicitly states, "the total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account." Ex. B. at 1.

30. Defendant then determined the total payable loss amount owed to Plaintiff was $4,941.00. Defendant arrived at this amount by utilizing the CCC valuation of $5,441.00 and then subtracting the deductible of $500.00 for a final payment of $4,941.00. A true and correct copy of Safe Auto's Settlement Breakdown is attached hereto as Exhibit C.

31. Defendant's payment of $4,941.00 did not include Sales Tax or Transfer Fees.

5

32. The ACV Sales Tax on Plaintiff's claim is approximately $380.87 because the applicable sales tax was in Hamilton County is 7% and the underlying value of Plaintiff's vehicle, according to Defendant, was $5,441.00. The title fees mandated by Ohio law on Plaintiff's claim were $15.00. The registration fees mandated by Ohio law on Plaintiff's claim were $4.50.

33. Plaintiff does not challenge Defendant's determination of the amount of damage calculated as the cost to repair the damage to the vehicle, nor that the amount was sufficient to constitute a "total loss," thereby capping Defendant's liability for the loss amount at the pre-loss ACV of the insured vehicle. Plaintiff also does not challenge Defendant's determination that the underlying value of the vehicle was $5,441.00.

34. Safe Auto's failure to include mandatory state and local sales tax, title fees, and registration fees in ACV constitutes a material breach of the Policy.

35. Safe Auto, as a matter of uniform procedure, does not include Sales Tax and Transfer Fees in making ACV payment notwithstanding its contractual obligation to do so. Safe Auto's failure to include Sales Tax and Transfer Fees in ACV payments constitutes a breach of contract with Plaintiff and every member of the Class.

**C. State Taxes and Fees**

36. Plaintiff brings this action individually and, as further set forth below, on behalf of similarly situated insureds in the states of Ohio, Kentucky, Indiana, Pennsylvania, Tennessee, Louisiana, Mississippi, Oklahoma, and Virginia.

37. Throughout the class period, the following states imposed mandatory sales taxes on every relevant private passenger vehicle transaction, which may be increased by county or local surtaxes. *See, e.g.*, Ohio Stat. § 5739.02(A) (Ohio sales tax rate of 5.75%); KRS § 139.200 (Kentucky sales tax rate of 6%); IN Code § 6-2-1 (Indiana sales tax rate of 7%); 61 Pa. Code §

6

60.16 (Pennsylvania sales tax rate of 6%); Tenn. Code Ann. §§ 67-6-102, 202 (Tennessee sales tax rate of 7%); MS Code § 27-65-201 (Mississippi sales tax rate of 5%).

38. Moreover, throughout the class period, these states, including Ohio, imposed mandatory Transfer Fees for each motor vehicle operated in the respective state.

39. For example, throughout the class period, the State of Ohio prohibited the buying or selling of a motor vehicle unless the certificate of title under the name of the buyer is provided, for which the state imposes a flat fee of $15.00. Additionally, the state of Ohio requires that every vehicle be legally and properly registered in order to be used or operated on highways and roadways in the state, for which a fee of $4.50 is imposed (except that after January 1, 2020, the fee was increased to $6.00).

40. As another example, throughout the class period, the State of Virginia prohibited the buying or selling of a motor vehicle unless the certificate of title under the name of the buyer is provided, for which the state imposes a flat fee of $15.00. Additionally, the state of Virginia requires that every vehicle be legally and properly registered in order to be used or operated on highways and roadways in the state, for which a transfer fee of $2.00 is imposed.

41. In each aforementioned state, ACV, when undefined, is interpreted to include replacement costs as a factor in determining the ACV of damaged property. *See, e.g.*, *Cincinnati Specialty Underwriters Ins. Co. v. C.F.L.P. 1, LLC*, 2015 U.S. Dist. LEXIS 132523, at *9-10 (W.D. Ky. Sep. 30, 2015) (citing *Whitehouse Condo. Grp., LLC v. Cincinnati Ins. Co.*, 569 F. App'x 413, 419 (6th Cir. 2014) (when ACV is undefined, relevant evidence includes replacement costs)); *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349 (Ind. 1982) (same); *Gilderman v. State Farm Ins. Co.*, 437 Pa. Super. 217, 221 (Pa. Super. 1994) (when "not defined in [a] policy [ACV] consistently has been interpreted as meaning 'the actual cost of repair or replacement less

depreciation.'"); *Lammert v. Auto-Owners (Mut.) Ins. Co.*, 572 S.W.3d 170 (Tenn. 2019) (ACV includes replacement costs less depreciation); *Hackman v. EMC Ins. Co.*, 984 So. 2d 139, 143 (La. Ct. App. 2008) ("Under Louisiana law, 'actual cash value' is defined as the reproduction cost less depreciation."); *Estate of Minor v. United Servs. Auto. Ass'n*, 247 So. 3d 1266, 1276 (Miss. Ct. App. 2017) ("Actual cash value is the replacement cost of property, less depreciation."); *Redcorn v. State Farm Fire & Cas. Co.*, 55 P.3d 1017 (Okla. 2002) (ACV includes consideration of replacement costs); *Filter Products Co., Inc. v. Travelers Indemn. Co. of Am.*, 1987 WL 488731, at *2 (Va. Cir. Ct. Oct. 5, 1987) (same).

42. Moreover, ACV is understood by all jurisdictions listed herein, as providing "pure indemnity," meaning to place an insured in his or his pre-loss position, which would necessarily include costs necessary to achieve the pre-loss position.

43. Defendant's Policy promises to indemnify the insured by paying the ACV of the vehicle in the event of a total-loss, which includes necessary "replacement costs," while accounting for depreciation and vehicle condition prior to the loss.

44. Nevertheless, Defendant, as a matter of uniform business practice, fails to include Sales Tax and Transfer Fees in making ACV payment to all of its insureds, including Plaintiff and the members of the Class.

## **CLASS ALLEGATIONS**

45. Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

46. Plaintiff asserts claims for breach of contract on behalf of a class (hereafter the "Class") defined as follows:

> All insureds in Ohio, Kentucky, Indiana, Pennsylvania, Tennessee, Louisiana, Mississippi, Oklahoma, and Virginia, under a policy issued by Safe Auto Insurance Company covering a vehicle with private-passenger automobile physical damage coverage, who submitted a first-party property damage claim where such vehicle was determined to be a covered total loss within the applicable statute of limitations until the date of any certification order.

47. Excluded from the Class are all officers and employees of Safe Auto and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

48. The members of the Class, which includes Plaintiff, are ascertainable and readily identifiable, including from information and records in Safe Auto's custody, possession, or control. The class is defined in reference to objective criteria.

49. **Numerosity**: Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is a large motor vehicle insurer and wrote hundreds of millions of dollars of private-passenger physical damage coverage premiums during the relevant time period, the classes of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical, and likely numbers in the tens of thousands. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies

properly owed to Plaintiff and the class members. Thus, numerosity within the meaning of Fed. R. Civ. P. 23(a)(1) is established.

50. **Commonality**: Plaintiff's claims raise common questions of law and fact, that are susceptible to common answers, to all members of the class within the meaning of FRCP 23(a)(2). These common questions include: (a) whether Defendant's standardized policy language includes coverage for Sales Tax; (b) whether Defendant's standardized policy language includes coverage for mandatory Transfer Fees; (c) whether Defendant's use of the term ACV, which is not defined in the Policy, includes consideration of costs necessary to replace the vehicle and achieve the insured's pre-loss position; and (d) whether Defendant breached its insurance contracts with the Plaintiff and the class members by failing to include Sales Tax and Transfer Fees as part of the ACV payment.

51. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for classwide adjudication. Defendant and all class members are bound by the same materially identical policy terms in states where ACV is interpreted to include consideration of replacement costs. By resolving the question of whether Policy requires Defendant to include Sales Tax and Transfer Fees in ACV payments, this Court will resolve virtually the entire claim of Plaintiff and every class member in a single stroke.

52. **Typicality**: Plaintiff's claim is typical to those of all class members within the meaning of Fed. R. Civ. P. 23(a)(3) because members of the class are similarly affected by Defendant's failure to include Sales Tax and Transfer Fees upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the

terms of Plaintiff's policies and Plaintiff's and Class Members' legal claims arise from the same core practices.

53. Plaintiff's claims are based upon the same legal theories as those of the Class Members and Plaintiff suffered the same harm as all the other Class Members. Plaintiff is not subject to any unique affirmative defenses to which Class Members are not subject. By pressing his own claim, Plaintiff necessarily and concurrently advances the claim of all Class Members.

54. **Adequacy**: Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and defending class actions. Plaintiff possesses no interest in conflict with the Class.

55. Plaintiff's counsel are experienced and successful class action litigators, have decades of experience, and possess the resources to litigate and prosecute the claim. Moreover, Plaintiff's counsel have specifically and successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

56. **Predominance**: Common legal and factual issues to the Class Members predominate over any individual issues within the meaning of Fed. R. Civ. P. 23(b)(3). The common issues articulated herein are not only the central issues to this litigation, they are virtually the only issues relevant to this litigation. Any individual issues are a product only of the fact that the value of vehicles varies – because Sales Tax is a percentage of underlying value, the *amount*

of Sales Tax varies. However, any variance is resolved by a ministerial and mechanical application of uniform rates and is independent from any question concerning the merits of the claim.

57. **Superiority**: Moreover, class treatment is superior to any other treatment within the meaning of Fed. R. Civ. P. 23(b)(3). Class treatment provides for a fair and efficient adjudication of the controversy because it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate consistent adjudication. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

58. The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

59. The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same in that it requires consideration of replacement costs in interpreting ACV. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

## **CLAIM FOR BREACH OF CONTRACT**

60. The allegations in the previous paragraphs are hereby incorporated by reference.

61. This count is brought by Plaintiff individually and on behalf of the Class Members.

62. Plaintiff was party to an insurance contract executed by Safe Auto as described herein. *See* Exhibit A. All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

63. The interpretation of Plaintiff's and all Class Members' insurance Policies are governed by similar state law in which ACV is interpreted to include consideration of replacement costs.

64. Plaintiffs and all Class Members made a claim determined by Defendant to be a first-party total loss claim under the insurance policy and determined by Defendant to be a covered claim.

65. By paying the total loss claim, Defendant determined that Plaintiff and each Class Member complied with the terms of their insurance contracts and fulfilled all duties and conditions required for each to be paid on his or his total loss.

66. The uniform Policy provisions covering Plaintiff's and all Class Members' claims required that full Sales Tax and Transfer Fees be paid on total losses, and as such, the Plaintiff and every Class Member was owed the ACV of the vehicle.

67. Defendant failed to include sufficient Sales Tax and/or Transfer Fees and thus failed to pay the ACV owed under the Policy to Plaintiff and every Class Member.

68. Each Class Member suffered damages due to Defendant's failure to pay full Sales Tax and Transfer Fees as required by the Policy.

69. Defendant's failures to provide the promised coverage constitute a material breach of contract with Plaintiff and every Class Member.

70. As a result of said breaches, Plaintiff and the Class Members are entitled under the insurance policies to sums representing the benefits owed for complete ACV payment, include sales tax, title transfer fees, registration fees, prejudgment and post-judgment interest, fees and of litigation, and other relief as is appropriate.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands relief and judgment as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above and appointing the undersigned as class counsel;

2. For an award of compensatory damages for the Class in amounts owed by Defendant;

3. For all other damages according to proof;

4. For an award fees, costs, and expenses as appropriate pursuant to applicable law;

5. For pre- and post-judgment interests on any amounts awarded; and

6. For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated this 2nd day of June, 2020.

                                                Respectfully submitted,

*/s/Daniel R. Karon*
Daniel R. Karon (0069304)
Beau D. Hollowell (0080704)
**KARON LLC**
700 West St. Clair Ave., Suite 200
Cleveland, OH 44113
(216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

**NORMAND PLLC**
Jacob Phillips
Ed Normand
3165 McCrory Place, Suite 175
Orlando, FL 32803
407-603-6031
jacob.phillips@normandpllc.com
ed@normandpllc.com

***Attorneys for Plaintiff***